UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RANDY JAMES PEREZ, | ) | Case No. CV 15-9279-PJW |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF THE | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I.

INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his claim for Supplemental Security Income ("SSI").  He claims that the Administrative Law Judge ("ALJ") erred when he: (1) rejected the treating doctor's opinion; (2) determined that Plaintiff and his mother were not credible; and (3) found that Plaintiff could work.  For the reasons explained below, the ALJ's decision is reversed and the case is remanded to the Agency for further proceedings consistent with this opinion.

II.

SUMMARY OF PROCEEDINGS

In August 2011, Plaintiff applied for SSI, alleging that he had been unable to work since December 31, 2002, due to chronic lower back pain, Hepatitis C, hypertension, and insomnia.  (Administrative Record ("AR") 226-34, 257.)  The Agency denied the applications initially and on reconsideration.  (AR 87, 97.)  Plaintiff then requested and was granted a hearing before an ALJ.  (AR 130-31.)  On February 27, 2013, he appeared with counsel and testified at the hearing.  (AR 48-50, 52-69.)  On March 19, 2013, the ALJ issued a decision denying his application for benefits.  (AR 98-112.)

Plaintiff appealed the ALJ's decision to the Appeals Council, which vacated the decision and remanded the case to the ALJ to further evaluate Plaintiff's mental impairment, reconsider the testimony of Plaintiff's mother, further evaluate the doctors' opinions after updating the record, develop the record regarding Plaintiff's past work, and, if warranted, obtain testimony from a vocational expert. (AR 114-16.)

On March 25, 2015, Plaintiff appeared with counsel at a second hearing before a different ALJ.  (AR 31-42.)  On June 26, 2015, the ALJ issued a decision denying Plaintiff's application for benefits. (AR 12-28.)  Plaintiff appealed to the Appeals Council, which denied review.  (AR 1-6.)  This action followed.

III.

ANALYSIS

A.    The Residual Functional Capacity Determination

The ALJ found that Plaintiff had the residual functional capacity to perform light work if it involved only occasional bending and

2

1 | stooping.  (AR 18.)  Plaintiff objects to this finding.  He contends

2 | that, in order to reach this conclusion, the ALJ improperly rejected

3 | the opinion of one of Plaintiff's treating doctors and discounted

4 | Plaintiff's and his mother's testimony without cause.  (Joint Stip. at

5 | 9-22, 37-43.)  For the following reasons, the Court remands this issue

6 | to the Agency for further consideration.

7 |        1.    The Treating Doctor's Opinion

8 |        In January 2013, Plaintiff's treating doctor, Dr. William

9 | Edelstein, diagnosed Plaintiff with chronic lower back pain and

10 | concluded that he could occasionally lift, carry, or pull less than

11 | ten pounds; stand or walk for a total of less than two hours in an

12 | eight-hour day; and sit continuously for less than six hours.  (AR

13 | 380.)  He also opined that Plaintiff could not reach repeatedly and

14 | that he would miss 60 to 120 hours of work per month.  (AR 380.)

15 | According to Dr. Edelstein, Plaintiff's condition had persisted for 13

16 | years.  (AR 380.)

17 |        Had the ALJ accepted Dr. Edelstein's opinion, he would have had

18 | to conclude that Plaintiff was not even capable of performing full-

19 | time sedentary work.  But the ALJ rejected Dr. Edelstein's opinion

20 | because: (1) it was not supported by objective medical evidence; and

21 | (2) it was undermined by the opinions of treating doctor John

22 | Landsberg, consultative examiner Ursula Taylor, and two reviewing

23 | doctors.  (AR 21.)  Ultimately, the ALJ concluded that Plaintiff could

24 | perform light work.  Plaintiff argues that the ALJ erred in

25 | discounting Dr. Edelstein's opinion.

26 |        It is the province of the ALJ to resolve conflicts in the medical

27 | evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

28 | There are three types of doctors that supply that evidence: treating

1 │ doctors, examining doctors, and reviewing doctors.  All things being

2 │ equal, treating doctors' opinions are entitled to the most weight

3 │ because they are hired to cure and have more opportunity to know and

4 │ observe the patient.  *Id*. at 1041.  Examining doctors are next on the

5 │ list, followed by reviewing doctors.  *See Lester v. Chater*, 81 F.3d

6 │ 821, 830-31 (9th Cir. 1995).  ALJs, however, are not required to

7 │ merely accept the opinion of any doctor and, where an opinion is

8 │ contradicted, may reject it for specific and legitimate reasons that

9 │ are supported by substantial evidence in the record.  *Id*. at 830.

10 │      In rejecting Dr. Edelstein's opinion, the ALJ noted that, though

11 │ a treating doctor's opinion is normally entitled to significant

12 │ weight, that rule is only applicable if the opinion is supported by

13 │ objective medical evidence.  (AR 21.)  He then went on to explain

14 │ that, "such is not the case regarding the assessment of Dr. Edelstein

15 │ of extreme physical limitations of 13 years duration (Exhibit 8F)."

16 │ (AR 21.)  In the ALJ's view, there was "no objective medical evidence

17 │ to support such a restrictive residual functional capacity . . . ."

18 │ (AR 21.)

19 │      Plaintiff complains that the ALJ's finding that Dr. Edelstein's

20 │ opinion was not supported by the objective medical evidence was too

21 │ general to be upheld on appeal.  The Court agrees in part and

22 │ disagrees in part.  Clearly there is no objective medical evidence

23 │ dating back to 2000 to support Dr. Edelstein's opinion that

24 │ Plaintiff's condition persisted for 13 years.  In fact, the medical

25 │ records from the Santa Barbara County Health Department, where Dr.

26 │ Edelstein worked and where he treated Plaintiff, only go back to 2010.

27 │ (AR 337-41, 377-429.)  Thus, the ALJ's finding that there was no

28 │

1  objective medical evidence to support Dr. Edelstein's 2013 opinion

2  that Plaintiff's condition had persisted for 13 years is affirmed.

3       The ALJ's companion finding that there was no objective medical

4  evidence to support Dr. Edelstein's restrictive residual functional

5  capacity finding is not.  There is some objective evidence in the

6  record that supports Dr. Edelstein's view, for example, his positive

7  findings in straight leg testing, and some that undermines it.  The

8  ALJ was tasked with sorting through the evidence and explaining which

9  evidence undermined Dr. Edelstein's opinion and which evidence

10 supported it.  His failure to do so amounts to error.  *See Rodriguez*

11 *v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) ("Merely to state that a

12 medical opinion is not supported by enough objective findings 'does

13 not achieve the level of specificity our prior cases have required,

14 even when the objective factors are listed seriatim.'") (quoting

15 *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)).

16      The ALJ also questioned Dr. Edelstein's opinion because it was

17 inconsistent with the opinions of treating doctor Landsberg (who took

18 over Plaintiff's treatment in February 2013), examining doctor Ursula

19 Taylor, and the reviewing doctors.  Generally speaking, this is a

20 valid reason for questioning a treating doctor's opinion.  *Andrews*, 53

21 F.3d at 1043 (upholding ALJ's rejection of treating doctor's opinion

22 based in part on the fact that it was contradicted by opinions of

23 nontreating doctors).  And it is supported in part by the record.  Of

24 the five doctors involved in this case, only one, Dr. Edelstein,

25 concluded that Plaintiff was so severely disabled that his physical

26 limitations precluded him from performing even sedentary work.  (AR

27 380.)  Three of the other four opined that Plaintiff could lift at

28 least 20 pounds, walk for six hours in an eight-hour day, and sit for

at least six hours, which translates into being able to perform light work.  (AR 83-84, 93, 360.)  Dr. Landsberg did not offer an opinion on Plaintiff's residual functional capacity.  He did, however, stop prescribing Plaintiff the narcotic Norco soon after he started treating Plaintiff, which could be interpreted as an indication of his view on the severity of Plaintiff's back pain.

The ALJ also explained that he relied on these other doctors based on the "length, nature and extent of the treating relationship, supportability with medical signs and laboratory findings, consistency with the record, and area of specialization." (AR 21.)  The ALJ failed, however, to explain what he meant by this.  For example, Dr. Edelstein clearly had the longest relationship with Plaintiff.  He treated Plaintiff from September 2010 to February 2013.  Dr. Taylor, the examining doctor, only saw him once and that was for an examination, not treatment.  The reviewing doctors never saw him at all.  Dr. Landsberg's treatment notes cover a period of about six months.  Thus, to the extent that the ALJ discounted Dr. Edelstein's opinion based on the length and nature of the treatment, the ALJ erred here, too, because Dr. Edelstein treated Plaintiff for the longest and, therefore, that would have been a reason to rely on his opinion.

The ALJ also questioned Dr. Edelstein's opinion because the minimal objective medical evidence there was--an "MRI indicating minimal to mild degenerative changes to the lumbosacral spine"--did not support his view that Plaintiff was disabled.  (AR 21.)  The Court does not find this reason persuasive.  None of the doctors opined that these findings establish that Plaintiff's back condition is not painful or debilitating.  It appears that this conclusion was the ALJ's alone.

1       Though the Court considers this a close call, it concludes that

2  remand is warranted for the ALJ to take another look at this issue.

3  In doing so, he should explain what medical evidence undermines Dr.

4  Edelstein's opinion and what the basis for that view is.  For example,

5  if the apparently unremarkable MRI findings establish that Plaintiff's

6  back condition is not as severe as Plaintiff and Dr. Edelstein claim,

7  then the ALJ should point to evidence in the record that substantiates

8  that finding.  The ALJ should also obtain Plaintiff's most recent

9  medical records and consider them in determining whether Plaintiff is

10  disabled.

11       2.    The ALJ's Credibility Determination

12       The ALJ found that Plaintiff was not credible.  Plaintiff argues

13  that the ALJ erred in doing so.  For the following reasons, this

14  finding is remanded for further consideration.

15       ALJs are tasked with judging a claimant's credibility.  *Andrews*,

16  53 F.3d at 1039.  In doing so, they can rely on ordinary credibility

17  techniques.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

18  Where there is no evidence of malingering, however, they can only

19  reject a claimant's testimony for specific, clear, and convincing

20  reasons that are supported by substantial evidence in the record.

21  *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

22       Plaintiff suffers from sciatica and testified that he has back

23  pain every day.  (AR 35.)  He claims that he can sit for only two

24  hours at a time and can walk for only about five minutes before he has

25  to rest.  (AR 40.)  He alleges that he uses a cane and a back brace

26  when his back goes out once or twice a month, which causes pain that

27  lasts up to two weeks.  (AR 41.)  According to Plaintiff, his back can

28  go out when he is washing dishes or reaching to put a dish into the

1  cupboard.  (AR 41.)  As a result of his ailments and his insomnia, he

2  only sleeps three to four hours a night.  (AR 42.)

3       The ALJ found that Plaintiff's sciatica could reasonably be

4  expected to cause his alleged symptoms but that his testimony that his

5  symptoms were debilitating was not entirely credible because: (1) his

6  ability to perform daily activities was inconsistent with his alleged

7  limitations; (2) the objective medical evidence did not support his

8  alleged degree of back pain; (3) he did not comply with treatment; and

9  (4) his treatment was conservative.  (AR 20, 21.)  These are valid

10 reasons for questioning a claimant's testimony.  *See Orn v. Astrue,*

11 495 F.3d 625, 639 (9th Cir. 2007) (holding ALJ can consider claimant's

12 ability to perform daily activities in assessing credibility); *Rollins*

13 *v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001) (noting ALJ can

14 consider objective medical evidence in determining credibility of

15 claimant); *Orn*, 495 F.3d at 638 (explaining ALJ may consider

16 claimant's failure to follow prescribed course of treatment in

17 evaluating testimony about severity of pain); *Meanel v. Apfel*, 172

18 F.3d 1111, 1114 (9th Cir. 1999) (holding inconsistency between

19 allegations of severe pain and conservative treatment was proper basis

20 for discounting credibility).  As explained below, however, not all of

21 them are supported by substantial evidence in the record.

22       The ALJ questioned Plaintiff's claim that he could only walk for

23 five minutes because his purported daily activities--including

24 cleaning and vacuuming--"required more than [five] minutes of

25 walking."  (AR 20-21.)  The Court does not agree with the ALJ's

26 finding here.  Plaintiff could have performed these chores in short

27 intervals over the course of a day, particularly, where, as here, he

28 was not working and was spending his days at home.

1     The government points out that Plaintiff told Dr. Edelstein that

2 he was biking and walking seven days a week for exercise.  (AR 389.)

3 Clearly, this level of daily activity is inconsistent with Plaintiff's

4 testimony that he suffered from debilitating pain that rendered him

5 incapable of working.  But the ALJ did not rely on this when analyzing

6 Plaintiff's credibility and, as such, the Court is not at liberty to

7 do so here.  *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)

8 ("[W]e cannot affirm the decision of an agency on a ground that the

9 agency did not invoke in making its decision.") (citation omitted).

10     The ALJ relied on the absence of objective medical evidence

11 supporting Plaintiff's alleged pain to find that Plaintiff was not

12 credible.  The problem with this finding is that the ALJ failed to

13 specify what evidence was missing and how the lack of it undermined

14 Plaintiff's testimony.  To the extent that he was referring to the

15 benign findings in the MRI, the Court is not convinced, absent expert

16 testimony, that that establishes that Plaintiff was not experiencing

17 pain and limitation.  The ALJ also failed to explain how the other

18 objective evidence that was there, for example, the positive straight

19 leg raising test results from Dr. Edelstein, did not support

20 Plaintiff's testimony.

21     The ALJ also questioned Plaintiff's sincerity because he failed

22 to follow medical advice.  There is evidence in the record to support

23 this finding.  Dr. Landsberg noted that Plaintiff essentially refused

24 to listen when he counseled him to start using different sleep

25 medication.  (AR 422, 426-27.)  This could be construed as a sign that

26 Plaintiff's pain and suffering was not as severe as he claimed.  But

27 Plaintiff's resistance here involved his insomnia medication, not his

28 pain medication.  And, though the insomnia and the pain from the

1  sciatica may have been related, the Court cannot conclude that

2  Plaintiff's failure to take his insomnia medication proves that his

3  statements about his back pain are exaggerated.

4      The ALJ pointed to the fact that Plaintiff received conservative

5  treatment for what Plaintiff claimed was a debilitating back ailment.

6  The Court sides with the ALJ here.  The medical record in this case is

7  sparse.  It consists of a handful of treatment notes from Santa

8  Barbara Health Care Center from 2010 to 2013 in which Plaintiff went

9  to see Dr. Edelstein and complained about a bad back, insomnia, high

10 blood pressure, and anxiety and Dr. Edelstein prescribed medications

11 to treat his conditions.  There are no records before 2010, despite

12 the fact that Plaintiff claims that he has been disabled since 2002.

13 There were no procedures performed on his back.  He did not receive

14 any injections.  He did not receive any physical therapy.  He simply

15 reported to Dr. Edelstein on an infrequent basis and received

16 medication.  Though the medication Dr. Edelstein prescribed for

17 Plaintiff's back pain was a narcotic, Norco, there is no indication in

18 Dr. Edelstein's records that anything more was ever done to treat

19 Plaintiff's condition.  Further, soon after Dr. Landsberg took over

20 Plaintiff's treatment, he stopped prescribing Norco.

21     Plaintiff purportedly used a back brace and a cane to treat his

22 back pain.  But there is no evidence to indicate that either were

23 prescribed and, even assuming that they were, the Court would

24 characterize them as conservative treatment, also.[1]

25

26

27     [1]  It appears that Plaintiff was referred to a pain specialist by
   Dr. Landsberg (AR 418) but there are no records from the pain
28 specialist.

1       In the end, some of the reasons cited by the ALJ are supported by

2 the record and some are not.  Because the Court is not convinced that

3 the reasons that stand are enough to reject Plaintiff's testimony, the

4 issue is remanded to the ALJ for further consideration.  *See Carmickle*

5 *v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162-63 (9th Cir. 2008)

6 (holding error is harmless only if substantial evidence remains to

7 support the ALJ's credibility finding).[2]

8       3.   Lay Witness Testimony

9       Plaintiff's mother submitted a written report, explaining what

10 she perceived were Plaintiff's limitations.  (AR 275-78.)  The ALJ

11 discussed her report but failed to explain whether he was accepting it

12 or rejecting it.  It seems fair to conclude, however, that the ALJ

13 rejected parts of her "testimony" because his findings relating to

14 what Plaintiff could do are inconsistent with what Plaintiff's mother

15 reported that he could do.  The Agency concedes that the ALJ failed to

16 properly address the mother's testimony but argues that, because her

17 testimony was so closely aligned with Plaintiff's, the ALJ's reasons

18 for rejecting Plaintiff's testimony can and should be applied to the

19 mother's.

20       The Court has remanded the issue of Plaintiff's credibility to

21 the ALJ.  Thus, the Agency's argument that the Court should uphold the

22 ALJ's rejection of the mother's testimony for the same reasons it is

23 upholding the rejection of Plaintiff's testimony necessarily fails.

24

25       [2]   The ALJ also seems to conclude that Plaintiff's mother's
26 testimony undermined Plaintiff's testimony.  (AR 21.)  The Court does
not see much difference between what Plaintiff reported and what his
27 mother reported.  (AR 263-70, 275-82.)  In fact, their written
reports, which were signed on the same day, closely mirror each other.
28 (AR 263-70, 275-82.)

1    On remand, the ALJ should consider the mother's input as well and
2  explain what weight, if any, he gives it and why.  *See Nguyen v.*
3  *Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("[L]ay witness testimony
4  as to a claimant's symptoms . . . *is* competent evidence" which the
5  Secretary must take into account.) (emphasis in original) (citations
6  omitted).

7  B.    Plaintiff's Past Relevant Work

8    Plaintiff contends that the ALJ erred in concluding that he could
9  perform his past work as a medical file clerk because the job is
10  defined as light work and Plaintiff is only capable of performing
11  sedentary work.  On remand, after addressing the issues outlined
12  above, the ALJ will have to take another look at Plaintiff's residual
13  functional capacity and then determine whether he can perform his past
14  work.

15  C.    The ALJ's Alternative Finding at Step Five

16    The ALJ also made an alternative finding that Plaintiff could
17  perform other jobs existing in the national economy, such as cashier
18  II and marker (retail).  (AR 22-23.)  Plaintiff argues that both of
19  these jobs involve frequent reaching, handling, and fingering and,
20  therefore, are beyond his ability to do sedentary work.  (Joint Stip.
21  at 51-52.)

22    The Court does not find Plaintiff's argument persuasive.  The ALJ
23  did not limit Plaintiff to frequent reaching, handling, and fingering,
24  nor did he limit him to sedentary work.  That being said, if the ALJ
25  makes a different residual functional capacity determination on
26  remand, he will have to to reconsider Step Four and, if warranted,
27  Step Five, as well.

28

1              IV.

2           CONCLUSION

3       For the reasons set forth above, the Agency's decision is

4  reversed and the action is remanded for further consideration

5  consistent with this Memorandum Opinion and Order.[3]

6       IT IS SO ORDERED.

7       DATED: February 8, 2017.

8                                    _Patrick J. Walsh_

9                                    _____
                                     PATRICK J. WALSH
                                     UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15  S:\PJW\Cases-Social Security\PEREZ, R 9279\Memo Opinion.wpd

16  _____

17       [3]  Plaintiff has requested that the case be remanded for an award
    of benefits.  (Joint Stip. at 53.)  The Court recognizes that it has
18  the authority to do so but finds that such relief is not warranted
    here.  *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), as
19  amended (Feb. 5, 2016) ("Unless the district court concludes that
    further administrative proceedings would serve no useful purpose, it
20  may not remand with a direction to provide benefits.").  Plaintiff
    purports to have suffered from a debilitating back condition for more
21  than 13 years and yet submits only a handful of medical records, which
    consists of treatment notes from to 2010-2013.  He alleged in a
22  written report in September 2011 and in his testimony in February 2013
    that he is practically incapacitated, being barely capable of sitting
23  for more than two hours and claimed to spend his days doing very
    little.  (AR 263-70.)  Yet, he told his doctor in October 2012 that he
24  was exercising seven days a week, riding a bike and walking.  (AR
    389.)  In the end, the Court concludes that the medical records
25  clearly do not support Plaintiff's claim that he has been disabled
    since 2002.  The only issue for remand is whether the few records that
26  are there from 2010 forward are enough to support a claim for
    disability for some period.  Further administrative proceedings are
27  necessary before that question can be answered.

28